## BOYCE *vs.* GEYER.

*Mala Fides.*—Where a person purchasing within a few days after its execution, from the payee, a note payable to bearer, and knows the maker to be a responsible farmer of foreign birth and limited knowledge of English—the character of the payee's business, that he is a transient, unknown and irresponsible vender of patents, and buys such note without asking any questions, and at a large discount, he is not a *bona fide* purchaser.

BOYCE *v.* GEYER.

A purchaser who is told the maker claims his note was given without consideration and will not pay it, is not a *bona fide* purchaser.

*Berrien Circuit,* 1871.

*By the Court,* BLACKMAN, J.—Boyce bought of Fulton, who bought of Lyon, one of the payees, the note of the defendant, of which this is a copy:

"$400 00.                    *Niles, March 9th,* 1869.

One year after date, the subscriber, of *Niles Township,* the county of *Barion* and State of *Michigan,* promises to pay Lyon & Burleigh or bearer, *four hundred dollars,* value received, with ten per cent interest.

JOHN M. GEYER."

When Boyce purchased the note he was told that Geyer was an honest, responsible, thick-headed Dutch farmer, who claimed he had no consideration for the note, and would have to be sued before he would pay it.

Boyce purchased before maturity, and paid full value.

Fulton bought of Lyon, besides Geyer's note, the notes of three other responsible farmers, amounting in all to $1,200 00, for which he paid $1,000 00, as follows: $150 00 in cash, and a stallion, said to be worth by a disinterested witness, between $400 00 and $500 00. He made the purchase in a very few days after the date of the note. He had purchased some notes of Lyon the year before. At this first purchase he asked of Lyon his business, residence, and the consideration, and then before paying for them saw the makers. On the rights these makers then bought, Fulton knew nothing was ever obtained. From the information then received from Lyon, Fulton knew him to be one of those transient, traveling and unknown patent right dealers, who infest the State. Fulton knew Lyon was anxious to sell for what he could get. Geyer was resident but some 3 miles from his office. He knew Geyer was as responsible as the best men in the country, that he was a farmer, of foreign birth, and little acquainted with English writing. The makers of the other notes were equally good. Fulton traded for the notes, asking no questions for conscience' sake.

After his purchase he had two conversations with Geyer, in which Geyer stated his case.

BOYCE v. GEYER.

At the sale to plaintiff he told him the note was one of the best he had, was worth its face, that the maker was a thick-headed Dutchman, who would have to be sued, but that the plaintiff would have no difficulty in collecting it, though knowing it was obtained by fraud.

The note was obtained from Geyer by these practices :

Lyon, in company with a lad who signs his name Billy Burleigh, called on defendant in his field, and proposed to make him an agent to sell Fisk's Fanning Mill. Defendant objected, but after listening to some honied words from Lyon the parties went to defendant's house. Then defendant agreed to take the agency. A contract made out in blank and *inter partes* was read to Geyer, and executed in duplicate.

No consideration for the agency was asked, and no money to be paid for it talked of, yet in a part of the contract, not read to Geyer, was a statement that he had paid $400 00 in note for it (the appointment.) By this contract Geyer was only to pay $15 00 apiece for the mills, sell them for $50 00, and pay over 25 per cent. of the profits to Lyon & Burleigh.

Then Lyon questioned him as to his property, and minuted his replies on the back of a slip of paper, and then asked Geyer to sign it, which he did. Lyon then told him he did not want him to sign there, but on the other side. On turning it over Geyer saw a printed blank not filled out. This blank is the note in question, without the letters in *italics*, or the figures. Geyer asked why he should sign that, and was told by Lyon that at the end of the year he should go to the maker's shop in South Bend, find how many mills he, Geyer, had bought, and then he would fill up the blank with their share of the profits, so that in case of Geyer's death he should have some evidence of his liability. On this representation Geyer signed the blanks. The note was afterwards filled out and stamped.

Upon these facts it is clear that this note was without consideration, was obtained by fraud, and fraudulently put in circulation, and therefore void in the hands of the payees and every *mala fides* holder.

Were Fulton and Boyce, or either of them, purchasers in good faith ?

In answering this question, I shall assume the law to be cor

rectly stated in *Goodman vs. Simonds*, 20 *How. U. S. R.*, 366; and require proof to defeat the holder's right, that he had knowledge of the facts and circumstances, or that the transaction is attended by bad faith.

But knowledge of the facts in detail is not necessary. General notice that there is some fraud, though he may not know the precise nature, is as sufficient as if he were told there was something wrong about it. *Byles*, 119; 2 *Pars. on Bills*, 279.

Applying this rule to Boyce, we see that he had notice the note would be contested for want of consideration, and took it on the strong recommendation that it could be collected by law.

For five years or more, the southern part of this State has been swindled of large sums by unknown dealers in patent or patented articles. This fact is quite notorious. The schemes have been successful through the aid of note dealers, and those men have relied on the Courts adhering to the law merchant, as understood by them. They should understand the law adapts itself to whatsoever men do as they do it—that wilful abstinence from inquiry where the circumstances of the particular transaction are such as show that the purchaser abstains from the inquiry lest it should disclose a vice in the bill, is evidence of bad faith—that buying a perfectly good note at half price is evidence of bad faith—that shaving with these traveling and transient venders of patent articles in the plunder of one's neighbors, can no more be honestly done through silence than buying at half price articles from a thief you know could not have come honestly by them.

The vender and the buyer both know that the note must be transferrable by delivery and must be held by a *bona fide* holder for value. The vender sees to it that he gets such a note, and the buyer sees to it that he is innocently ignorant of every fact which will weaken his title. There is simply a strife to see which shall get the greatest share of the plunder. Then the vender disappears never more to be seen or heard of.

Fulton says he knew Lyon was a travelling dealer in patents, but did not inquire how he came by the note because he thought it was given for a patent pump.

He had a general knowledge of the swindling going on in

patent rights. It seems to me he intentionally and for a purpose abstained from inquiring, because inquiry would have deprived him of $200 00 on this note. See on this point, *Chitty on Bills,* 11 *Ed., p.* 258 ; *Byles on Bills,* side-page, 119.

That he was not bound to inquire where there were no reasons for it, I admit, but in this case he knew too much to be silent and blind together.

I must hold therefore that in purchasing the note he was knowingly participating with Lyon in the profits of the fraud and that he is not a *bona fide* holder.